UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JEANNE SACKLOW, et al., individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) NO. 3:18-cv-00360 |
| v. | )<br>) |
| SAKS INCORPORATED, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This putative class action arises out of a data breach concerning payment cards used at Saks' stores. Fourteen named plaintiffs have brought claims for negligence; negligence *per se*; breach of implied contract; unjust enrichment; and violation of various state unfair competition, data breach, consumer protection, and consumer fraud statutes. (Doc. No. 51.) Before the Court is Saks' Motion to Transfer Venue (Doc. No. 55) to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), to which Plaintiffs have responded in opposition (Doc. No. 57) and Saks has replied (Doc. No. 58). The parties have also submitted supplemental authority. (Doc. Nos. 87, 89, 90.) For the following reasons, the motion will be granted.

I.  Factual Allegations and Background

   A.  Allegations

On April 1, 2018, Saks announced that it "became aware of a data security issue involving customer payment card data." (Doc. No. 51 at ¶ 3.) On April 27, 2018, Saks disclosed that hackers had placed malware on Saks' retail systems in order to collect customer payment card information, including cardholder name, payment card number and expiration dates, when shoppers used their

credit and debit cards at its stores. (Id. at ¶ 4.) The Amended Complaint alleges that this data breach was enabled by Saks security failures and failure to abide by best practices and industry standards concerning the security of payment systems. (Id. at ¶¶ 6-7.)

Saks is a Tennessee corporation. (Id. at ¶ 11.) However, Saks has no offices or employees in Tennessee. (Doc. No. 56-9 at ¶¶ 5-6.) Saks does not own or operate any of its Saks Fifth Avenue or Saks OFF 5TH stores in Tennessee. (Id. at ¶ 7.) There is no Saks Fifth Avenue store within 100 miles of Nashville, Tennessee. (Id. at ¶ 8.) There is one Saks OFF 5TH store in Tennessee, but it is not owned or operated by Saks (rather, by another entity not party here and not itself incorporated in Tennessee). (Id. at ¶ 9.) The headquarters and principal place of business of Saks and its corporate parent, Hudson's Bay Company, is in New York. (Doc. Nos. 2 at ¶ 5; 56-9 at ¶ 3.) Saks operates 29 Saks Fifth Avenue and Saks OFF 5TH stores in New York. (Doc. No. 56-9 at ¶¶ 10-11.)

There are fourteen named plaintiffs in this action. None of them reside in Tennessee or within 100 miles of Nashville. None of the named plaintiffs is alleged to have shopped at the one Saks OFF 5TH store in Tennessee. (Doc. No. 51.) Five of the named plaintiffs live in New York and are alleged to have shopped at Saks stores in New York. (Id. at ¶¶ 18, 19, 20, 21, 22.) Two additional named plaintiffs reside nearby in New Jersey. (Id. at ¶¶ 16-17.) The remaining named plaintiffs reside in Arizona, California, Florida, Illinois, Georgia, Pennsylvania, and Texas. (Id. at ¶¶ 12, 13, 14, 15, 23, 24, 25.) The named plaintiffs seek to represent a national class of persons who used a credit or debit card at a Saks store from May 1, 2017 to April 1, 2018, or, in the alternative, sub-classes of those persons across eight different states, none of which is Tennessee. (See id. at ¶¶ 66-67.)

2

B. Background

The Saks data breach incident led to multiple lawsuits. Two of the named plaintiffs filed suit here in the Middle District of Tennessee. At the same time, five similar actions were filed in the Southern District of New York. *Four* of those actions were filed by seven current named plaintiffs in *this* action (Vains, Lefkowitz, Tafet, Carthan, Levitt-Raschella, Joseph, and Wade). On April 18, 2018, Vains – now a plaintiff in this action – filed a motion with the Judicial Panel on Multi-District Litigation ("JPML") to transfer the then-pending (and any subsequent) data breach cases to a single judge in the *Southern District of New York* pursuant to 28 U.S.C. § 1407. (Doc. No. 56-2.) The motion argued that consolidation in the Southern District of New York was appropriate because that was where the defendants "maintain their headquarters and central operations in the United States." (Id. at ¶ 10.) The motion highlighted that the actions all sought national classes for Saks and Lord & Taylor shoppers based on the data breach incident under the common law and state statutory theories of liability. (Id.) Further, the Motion stated: "Absent transfer and consolidation, there is a substantial risk of inconsistent rulings on issues ranging from discovery to class certification in each case. Centralization would eliminate that risk, conserve judicial resources, reduce litigation costs, and permit the cases to proceed to trial in a more efficient manner." (Id. at ¶ 9.) Eight other plaintiffs in *this* action supported that motion for consolidation in the Southern District of New York. (See Doc. Nos. 56-3, 56-4.) In one filing, some of those plaintiffs said that the Southern District of New York is "the most appropriate forum" and "the preferable court" because it is accessible, the defendants maintained their headquarters there, and witnesses and evidence were present. (Doc. No. 56-4 at 5.) Those eight plaintiffs noted that the Middle District of Tennessee might "also be appropriate" in the alternative. (Id.; see also Doc. No. 56-3 at 3.)

3

On August 1, 2018, the JPML declined to centralize the cases under § 1407. (Doc. No. 56-1.) It did so because "centralization under Section 1407 should be the last solution after considered review of all other options." (Id. at 1.) The JPML explained, "where 'a reasonable prospect' exists that the resolution of a Section 1404 motion or motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to Section 1407 centralization." (Id.) After specifically noting that one California district court had already transferred a Saks data breach case to the Southern District of New York under § 1404, the JPML observed that "although no Section 1404 motion has yet been filed in the Middle District of Tennessee action, those plaintiffs also are New York residents and support centralization in either the Southern District of New York or the Middle District of Tennessee." (Id. at 2.) But the likely future for these cases in New York that the JPML seems to have anticipated never came. Within two weeks of the JPML's decision, four of the Saks data breach actions pending in the Southern District of New York were voluntarily dismissed. (Doc. No. 56 at 7 (collecting cases).) All but one of the plaintiffs from those dismissed New York actions were added to this action in Tennessee, and they now resist transfer to the Southern District of New York.

While this case has been pending, several other Saks data breach cases have been transferred. In a case similar to this in the Central District of California, Mekerdijian v. Saks Fifth Avenue LLC, et al., the court considered a similar motion to transfer under § 1404(a) and was presented essentially the same declarations that now accompany the motion before this Court. The court concluded that, despite the fact that the complaint alleged extensive violations of California law, transfer to the Southern District of New York was clearly warranted under the relevant considerations. (See Doc. No. 56-7.) After Mekerdijian was transferred to New York, the plaintiffs dismissed the case. (Doc. No. 56 at 8.)

4

Three months later, another case from California was transferred by stipulation under § 1404(a) to the Southern District of New York. (See Doc. No. 56-8); Rudolph v. Hudson's Bay Co., et al. (S.D.N.Y. Case No. 1:18-cv-8472 (PKC)). The plaintiffs in *this* action recently attempted to intervene in the Rudolph case so they could move to dismiss, stay, or transfer it. Their motion was denied. (Doc. No. 87-1.) As the Court considers this § 1404(a) motion, the Rudolph putative class action based on the same data breach actively proceeds in the Southern District of New York.

Finally, there is an additional case against a related entity arising from the data breach that has been proceeding outside of the Middle District of Tennessee. Up until very recently, a putative class action against Lord & Taylor has been pending in the District of Delaware.[1] See Harris, et al., v. Lord & Taylor LLC (D. Del. Case No. 1:18-cv-00521). Indeed, Harris involves some of the *very same named plaintiffs* as this case against Saks. On April 25, 2019, the District of Delaware granted the § 1404(a) motion of Lord & Taylor, which is incorporated in Delaware, to transfer the Harris case to the Southern District of New York. (Doc. No. 90-1.) After noting that none of the named plaintiffs lived or were alleged to have shopped in Delaware, the court found that there was "no indication that any of the claims arose in Delaware" and rejected the named plaintiffs' argument that this action arose outside of New York.[2] (Id. at 6-7.) The court also found that the convenience of the parties weighed in favor of transfer because "the substantial majority of the parties " are in and around New York and "all would have to travel" to Delaware for litigation purposes. (Id. at 7-8.) Finally, the court concluded that transfer was appropriate so one district court could resolve similar claims arising from the same underlying events. (Id. at 10-11.)

---

[1] Lord & Taylor is also a subsidiary of Hudson's Bay Company. (Doc. No. 58-1 at ¶ 2.)

[2] Lord & Taylor offered the court a declaration from the same Hudson's Bay Company executive that Saks has utilized in this case. (Doc. No. 90-1 at 2.)

Accordingly, the Southern District of New York is now home to two putative class actions arising from the data breach incident.

II.     Relevant Law

Saks seeks transfer of this action pursuant to 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." With this statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." Kerobo v. Sw. Clean Fuels Corp., 285 F.3d 531, 537 (6th Cir. 2002). "The onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant," and it is a substantial one. Heffernan v. Ethicon Endo-Surgery Inc., 828 F.3d 488, 498 (6th Cir. 2016); Smith v. Kyphon, Inc., 578 F. Supp. 2d 954, 958 (M.D. Tenn. 2008). Unless the balance is strongly in favor of the defendant, a plaintiff's choice of forum should rarely be disturbed. Reese v. CNH America LLC, 574 F.3d 315, 320 (6th Cir. 2009); Dowling v. Richardson-Merrell, Inc., 727 F.2d 608, 612 (6th Cir. 1984). A defendant must therefore make a clear and convincing showing that the balance of convenience strongly favors an alternate forum. See Doe v. United States, No. 3:16-cv-0856, 2017 WL 4864850, at *2 (M.D. Tenn. Oct. 26, 2017) (citing Flores v. United States, 142 F. Supp. 3d 279, 287 (E.D.N.Y. 2015)).

In reviewing a motion to transfer, the court balances case-specific factors, including the private interests of the parties and public-interest concerns, such as systemic integrity and fairness, which come under the rubric of "interests of justice." Reese, 574 F.3d at 320; Moore v. Rohm & Haas Co., 446 F.3d 643, 647 n.1 (6th Cir. 2006) (citation omitted). Private interests include: (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity

and fairness; and (6) the plaintiff's choice of forum. Stewart v. American Eagle Airlines, Inc., No. 3-10-00494, 2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010); Smith, 578 F. Supp. 2d at 962. Public interests include the enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, public policies of the fora, and familiarity of the trial judge with the applicable state law. Smith, 578 F. Supp. 2d at 962. Transfer of venue is inappropriate where it serves only to shift inconvenience from one party to the other. Heldman v. King Pharm., Inc., No. 3-10-1001, 2010 WL 5300875 at *2 (M.D. Tenn. Dec. 20, 2010).[3]

III. Analysis

In short, Saks contends Plaintiffs' choice of the Middle District of Tennessee is entitled to little deference; that this forum lacks any real connection to the events at issue; and that most, if not all, of the potential witnesses and evidence is located in the Southern District of New York. It further argues that, for the sake of efficiency and consistency, this case should be litigated where two other class actions concerning the data breach are now pending. Plaintiffs respond that Saks elected to be incorporated in Tennessee and that they are entitled to deference of their choice of that valid forum for a national class action. Plaintiffs do not argue that this case could not have been brought in the Southern District of New York, which is a prerequisite for transfer under § 1404(a). Indeed, because Saks has its headquarters in New York, it "resides" there for purposes of

---

[3] The Court appropriately considers facts outside the pleadings in resolving a motion to transfer. U.S. v. Gonzales & Gonzales Bonds and Ins. Agency, Inc., 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010); Tenn. Imports, Inc. v. Filippi, 745 F. Supp. 1314, 1320 (M.D. Tenn. 1990) (citing Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986)). Despite doing so, however, the Court still draws all reasonable inferences in favor of the plaintiffs. Gonzales & Gonzales, 677 F. Supp. 2d at 991.

7

the venue statute. 28 U.S.C. § 1391(b). Transfer is therefore permitted; the question is whether it is appropriate.

      a.      <u>Weight Accorded to Plaintiffs' Selection of Forum</u>

A plaintiff's choice of forum is usually entitled to "substantial consideration" in balancing the § 1404(a) factors. <u>Smith</u>, 578 F. Supp. 2d at 962. However, the level of deference diminishes in certain circumstances. First, "when plaintiffs do not reside in their chosen forum, their choice should be given less weight than would otherwise be the case." <u>W.H. by and through M.H. D.R. v. Tenn. Dep't of Educ.</u>, Case No. 3:15-1014, 2016 WL 236996, at *3 (M.D. Tenn. Jan. 20, 2016). Second, a plaintiff's choice of venue is entitled to less deference where the operative facts – "the site of the events from which the claim arises" – occurred elsewhere. <u>Tenn. v. Gibbons</u>, No. 3:16-cv-00718, 2017 WL 4535947, at *3 (M.D. Tenn. Oct. 10, 2017). This is especially the case for class actions, which diminish a plaintiff's claim for deference to choice of venue because class members are frequently not limited to residents of any particular state. See <u>Dantes v. Indecomm Holdings, Inc.</u>, No. 1:13-CV-1290-JDB-egb, 2014 WL 4161982, at *3 (W.D. Tenn. Aug. 19, 2014) ("[I]n a nationwide class action[,] . . . a plaintiff's choice of forum is entitled to less deference."); <u>Heldman</u>, 2010 WL 5300875, at *2; <u>Wayne Cty. Emps. Ret. Sys. v. MGIC Inv. Corp.</u>, 604 F. Supp. 2d 969, 976 (E.D. Mich. 2009) (same); <u>cf</u>. <u>Koster v. (Am.) Lumbermens Mut. Cas. Co.</u>, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs . . . , the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.") (applying analogous common law doctrine of *forum non conveniens* to shareholder derivative suit).

Here, none of the named plaintiffs reside in Tennessee, none of the alleged events relevant to the data breach took place in Tennessee, and this is a putative class action in which the named

8

plaintiffs seek to represent a national class of persons or sub-classes of persons across states that do not include Tennessee. Furthermore, there is no store in Tennessee owned or operated directly by Saks, making it likely that extremely few putative class members would even reside in Tennessee. The choice of the Middle District of Tennessee as the forum for this litigation is therefore entitled to less weight than in usual circumstances.

      b.      <u>Convenience of Witnesses</u>

The convenience of witnesses, especially non-party witnesses, is perhaps the most important factor in the transfer analysis. <u>Stewart</u>, 2010 WL 4537039, at *2; <u>Heldman</u>, 2010 WL 5300875, at * 2; <u>Smith</u>, 578 F. Supp. 2d at 963. Saks has established through declarations that its witnesses are located in the New York City area. These witnesses include all Saks executives; all Saks employees with knowledge of information security policies and procedures; all Saks employees relevant to the data breach and Saks' response; and all third-party consultants and information security experts who discovered, analyzed, and managed the data breach for Saks. (Doc. No. 56-5 at ¶¶ 3-4). While it is generally true that "a corporation is expected to make its employees available to testify," <u>Clark v. Dollar Gen. Corp.</u>, No. 3:00-0729, 2001 WL 878887, at *9 (M.D. Tenn. May 23, 2001), it does not have that power over third-parties. Thus, that final group of witnesses, the non-parties who investigated and responded to the data breach at Saks' behest, is important. They are employed at Verizon PCI Forensic Investigation in Basking Ridge, New Jersey, which is 40 miles from New York City. (Doc. No. 56-5 at ¶ 7.) This is within the subpoena power of, and highly convenient to, the Southern District of New York, but not within

the subpoena power of, and significantly inconvenient to, the Middle District of Tennessee.[4] The Court therefore concludes that this factor weighs in favor of transfer.

      c.      <u>Convenience of the Parties</u>

A transfer at the behest of a defendant is disfavored where it merely shifts the burden of litigating in an inconvenient forum to the plaintiff. <u>Doe</u>, 2017 WL 4864850, at *2 (citing <u>Alvarado v. United States</u>, Civil Action No. 16-5028, 2017 WL 2303758 at *6 (D.N.J. May 25, 2017)). It would clearly be more convenient for Saks to conduct discovery and litigate in New York, where all of the evidence and its personnel are located, than to engage in the extra steps necessary to participate in a protracted litigation in the Middle District of Tennessee. At the same time, Plaintiff have not established that it is any more inconvenient for them to litigate in New York. Five of the named plaintiffs live in New York and two live in adjacent New Jersey, and eight of them originally filed suit against Saks in New York. Again, it is important that none of the named plaintiffs lives in Tennessee. Any inconvenience that plaintiffs' counsel – who are spread throughout the country and have represented that they are willing to travel to New York for discovery in any event – might encounter in litigating in New York as opposed to Nashville is minimal. Indeed, the docket reflects that 7 of 17 counsel of record for Plaintiffs are *located in New York*. Nine of the remaining 10 counsel are located in Illinois; Pennsylvania; New York; Washington, D.C.; Tampa, Florida; and Cincinnati, Ohio, which are no more convenient to

---

[4] In the opposition, Plaintiffs argued, based on a Mississippi Business Journal article, that they anticipate witnesses from Saks' payment processing center in Jackson, Mississippi, which is closer to Tennessee than New York. (Doc. No. 57 at 6-7.) However, as part of its reply Saks submitted the Supplemental Declaration of Anthony Longo, the head of the Global Information Security Program of Hudson Bay Company, the parent company of Saks & Company LLC. (Doc. No. 58-3.) Longo explains who the individuals are that were involved in responding to the data breach incident and none of these witnesses was employed in Jackson, Mississippi. (<u>Id</u>.)

Nashville than to New York. Plaintiffs have simply not demonstrated that the Middle District of Tennessee is any way more or less convenient for any party such that transfer to New York would impermissibly shift the burden of litigating in an inconvenient forum. This factor therefore favors transfer to New York.

      d.      <u>Access to Evidence</u>

This factor is not a predominate concern in deciding venue and "generally neutral," because the rapid march of technology has facilitated the movement of documents to different locations. <u>Doe</u>, 2017 WL 4864850, at *3; <u>Wayne Cty.</u>, 604 F. Supp. 2d at 975-76 <u>Stewart</u>, 2010 WL 4537039, at *3. However, this case involves a high-level breach of corporate systems and attendant relevant corporate policies and practices. Most of the evidence will therefore likely be derived from Saks' computer systems and corporate records, some of which may be difficult or expensive to duplicate or transfer. Saks has established that all such evidence is located in New York. (Doc. No. 56-5 at ¶ 6.) Thus, this factor favors transfer. <u>Hawkins v. Gerber Prods. Co.</u>, 924 F. Supp. 2d 1208, 1216 (S.D. Cal. 2013); <u>Dacar v. Saybolt LP</u>, No. 7:10-CV-12-F, 2011 WL 223877, at *7 (E.D.N.C. Jan. 24, 2011).

      e.      <u>Ability to Apply State Law</u>

This case involves basic tort law as well as analogous state consumer protection laws. These are the types of claims that federal courts routinely and skillfully consider. The courts of the Southern District of New York are no less capable of applying the laws of Tennessee or the eight other states invoked in the Amended Complaint. <u>See, e.g.</u>, <u>Doe</u>, 2017 WL 4864850, at *3 ("Courts have found this factor to be neutral where, as here, the only matters of state law involve common law torts or negligence"); <u>Metz v. U.S. Life Ins. Co. in City of New York</u>, 674 F. Supp. 2d 1141,

1148 (C.D. Cal. 2009) ("[C]ourts in [one state] are fully capable of applying [another state's] substantive law."). Accordingly, this factor is neutral.

  f.  <u>Locus of Operative Facts</u>

This is an "important factor" in resolving a motion to transfer venue. <u>Wayne Cty.</u>, 604 F. Supp. 2d at 976 (citing <u>ZPC 2000, Inc. v. SCA Group, Inc.</u>, 86 F.Supp.2d 274, 279 (S.D.N.Y. 2000)); <u>see also</u> <u>Oakley v. Remy Int'l, Inc.</u>, No. 2:09-0107, 2010 WL 503125, at *5 (M.D. Tenn. Feb. 5, 2010) ("A fundamental principle guiding the Court's analysis of a motion to transfer is that litigation should proceed in that place where the case finds its center of gravity.") (citation omitted). Plaintiffs focus on their allegations that the putative class members made purchases throughout the United States and the cyberthieves made illicit purchases throughout the United States, in contending that the "scope" of the case is nationwide. However, while it may be true that the data breach drew from nationwide transactions and its aftereffects were felt nationwide, the core of this case is about the data breach *itself*, what *at Saks* led to it, and what *at Saks* happened after it. (<u>See</u> Doc. No. 51.) The allegations in the Amended Complaint case therefore revolve around the data breach itself (resulting from a penetration of Saks' cyber infrastructure), the degree to which Saks's corporate policies and practices "enabled" the theft of purportedly protected data, and how Saks responded to the breach. Plaintiffs do not seriously contend that these policies, actions, or statements arose from anywhere other than Saks' operational headquarters. The locus of the breach and the policies and practices at issue is therefore in New York, not at purchase terminals throughout the United States where shoppers bought clothing or thieves bought loot.[5] Accordingly, because the "center of gravity" of this case is in New York, this factor favors transfer.

---

[5] Even if the Court relied on this metric, New York would actually still predominate. According to the Declarations of Hudson's Bay Company Vice President Craig Slater, 36.1% of Saks'

g. Local Interest in Deciding Local Controversies at Home

When a company is incorporated in a state, there can sometimes be a compelling public interest in deciding a controversy at home. North v. McNamara, 47 F. Supp. 3d 635, 648 (S.D. Ohio 2014). Plaintiffs argue that point here by emphasizing that Saks incorporated in Tennessee in 1919. But Plaintiffs do not explain any benefits that Saks currently receives from its incorporation or any public or local interest that is implicated by this action. While Saks is indeed a Tennessee corporation, it does not pretend to do any measurable business here that would trigger a persuasive local interest in deciding this controversy. This factor is therefore not outcome determinative.

h. Other Factors

Most of the other remaining factors are neutral at best. First, neither party has raised a concern about the availability of process to compel attendance of unwilling witnesses. Second, plaintiffs' arguments concerning the two districts' docket congestion and time to trial are not particularly compelling.[6] Third, no argument has been made about the relative means of the parties – i.e., that transfer would cause a substantial financial hardship.

Finally, neither party has identified any important public policies dictate a particular result here. Remarkably, Plaintiffs argue that a "public policy" that weighs against transfer is that the

---

shoppers live within 100 miles of New York (Doc. No. 58-1 at ¶ 4), while only 0.5% live within 100 miles of Nashville, Tennessee (Doc. No. 58-2 at ¶ 4.)

[6] The Southern District of New York is busy, but it has seven times more judges than the Middle District of Tennessee. In reality, the dockets of district judges in the Middle District of Tennessee and the Southern District of New York are relatively comparable. In any event, this factor is of minor importance where another district is demonstrated to be more convenient. See North, 47 F. Supp. 3d at 647 (even where one docket was shown to be less congested, declaring factor neutral because there was action in other district that made consideration by other court more efficient).

13

law is more favorable to them in Tennessee than in New York. (See Doc. No. 57 at 14-15.) Plaintiffs contend that this Court should review the substantive law they may face elsewhere and base its § 1404(a) decision on their likelihood of success. This type of consideration is *not* part of the § 1404(a) analysis. See, e.g., Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 234 (D.N.J. 1996) ("Although Plaintiffs may not like the results they have been getting in California, that is not a factor which is considered on a 1404(a) transfer."). But, more importantly, it would be inappropriate for the Court to defer to a purported "public policy" premised upon a greater likelihood of success of the Plaintiffs and, by extension, a lesser likelihood of success by Saks. It is not the role of the Court to take sides in a case.

> i. <u>Trial Efficiency and the Interests of Justice Based on the Totality of the Circumstances</u>

The Court also must consider "those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" Langley v. Prudential Mortg. Capital Co., LLC, 546 F.3d 365, 370 (6th Cir. 2008) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). Factors traditionally considered in an "interest of justice" analysis relate to the efficient administration of the court system. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220-21 (7th Cir. 1986). In this regard, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different [d]istrict [c]ourts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960). This is especially true for class actions. See Wayne Cty., 604 F. Supp. 2d at 977 ("[T]o allow two separate district courts . . . to address almost identical causes of action involving identical issues in class actions whose members overlap[ ] would be an inefficient use of judicial resources."). Accordingly, "related

litigation should be transferred to a forum where consolidation is feasible," even if not guaranteed. Coffey, 796 F.2d at 220-21.

The Rudolph putative class action in the Southern District of New York encompasses the same subject matter and similar claims and is procedurally ahead of this case; it has now been joined by the Harris putative class action that also arises from the data breach. The administration of justice would be frustrated by having this related litigation moving on a potentially conflicting track in a different district when transfer is an available option. See, e.g., Talent Tree Crystal, Inc. v. DRG, Inc., No. 1:04-CV-875, 2005 WL 3312554, at *5 (W.D. Mich. Dec. 7, 2005) ("A transfer will promote judicial economy by obviating the need to pursue two actions involving the same [subject] in distant forums. In the event the two cases are consolidated, it would allow a single court to provide a final adjudication of the parties' . . . dispute. Even if the cases are not consolidated, judicial economy is served by placing related claims before the same court."); Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd., 645 F. Supp. 89, 92 (E.D.N.Y. 1986) ("[T]he pendency of a related case in the proposed transferee forum is a powerful reason to grant a motion for a change of venue."). Moreover, there is almost no possibility that Rudolph and Harris would be transferred *here*, given that these plaintiffs' overtures have already been rejected in Rudolph already and that Lord & Taylor, the defendant in Harris, has no connection whatsoever to Tennessee. Thus, realistically, the Southern District of New York is the only court that can decide *all* of the data breach cases in an efficient and coordinated manner. Given this, "[i]t is quite clear that these cases should be adjudicated together, and the forum that will accommodate them all is where the present action should go." Wayne Cty., 604 F. Supp. 2d at 978. The Court therefore concludes that final "interest of justice" factor favors transfer.

IV.     Conclusion

The Court of Appeals has not dictated a precise way to balance the § 1404(a) factors, and the Court has considerable discretion. Having considered the public and private factors, the Court concludes that, although venue is properly laid in this district, Saks has met its substantial burden of clearly and convincingly demonstrating that transfer to the Southern District of New York would promote the convenience of the parties and witnesses and would be in the interests of justice. Overall, here, transfer will eliminate the risk of inconsistent rulings, conserve judicial resources, reduce litigation costs, and permit the case to proceed in the most efficient manner in the preferable convenient venue. It is therefore favored and appropriate.

For these reasons, Saks' Motion to Transfer Venue (Doc. No. 55) pursuant to 28 U.S.C. § 1404(a) will be granted.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE